IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
ANDERSON/GREENWOOD DIVISION

Patsy J.W. Fuller,                    )        Civil Action No. 8:11-cv-02854-TLW-JDA
                        Plaintiff,    )
                                      )
        vs.                           )        **REPORT AND RECOMMENDATION**
                                      )        **OF MAGISTRATE JUDGE**
Michael J. Astrue,                    )
Commissioner of Social Security,      )
                                      )
                        Defendant.    )

        This matter is before the Court for a Report and Recommendation pursuant to

28 U.S.C. § 636(b)(1)(B) and Local Civil Rule 73.02(B)(2)(a), D.S.C.[1]  Plaintiff brought this

action pursuant to 42 U.S.C. § 405(g) to obtain judicial review of a final decision of the

Commissioner of Social Security ("the Commissioner"), denying Plaintiff's claim for

disability insurance benefits ("DIB").  For the reasons set forth below, it is recommended

that the decision of the Commissioner be affirmed.

## PROCEDURAL HISTORY

        In April 2007, Plaintiff filed an application for DIB, alleging an onset of disability date

of January 1, 1998. [R. 97–101.]  The claim was denied initially and on reconsideration by

the Social Security Administration ("the Administration").  [R. 71–80, 85–87.]  Plaintiff

requested a hearing before an administrative law judge ("ALJ") [R. 89], and on June 30,

2009, ALJ Ann G. Paschall conducted a de novo hearing on Plaintiff's claims [R. 46–70].

---

[1]A Report and Recommendation is being filed in this case, in which one or both parties declined to consent to disposition by a magistrate judge.

The ALJ issued a decision on October 9, 2009, finding Plaintiff not disabled under the Social Security Act ("the Act"). [R. 23–29.] At Step 1,[2] the ALJ found Plaintiff last met the insured status requirements of the Act on December 31, 2001 and had not engaged in substantial gainful activity during the period from her alleged onset date through her date last insured. [R. 25, Findings 1 & 2]. At Step 2, the ALJ found Plaintiff had severe impairments of fibromyalgia and dermatitis and non-severe impairments of depression and anxiety. [R. 25, Finding 3.] At Step 3, the ALJ determined none of these impairments, singly or in combination, met or medically equaled one of the impairments listed at 20 C.F.R. Part 404, Subpart P, Appendix 1; the ALJ specifically considered Listing 8.05. [R. 26, Finding 4.]

Before addressing Step 4, Plaintiff's ability to perform her past relevant work, the ALJ made the following findings as to Plaintiff's residual functional capacity ("RFC"):

> [T]hrough the date last insured, the claimant had the residual functional capacity to perform the full range of light work as defined in 20 CFR 404.1567(b): can stand, walk, and sit 6 hours, each, of an 8 hour workday, lift and carry 10 pounds frequently and 20 pounds occasionally.

[R. 26, Finding 5.] Based on this RFC, at Step 4, the ALJ found Plaintiff could perform her past relevant work as a cashier, title clerk, and secretary. [R. 28, Finding 6.] Consequently, the ALJ found Plaintiff was not under a disability as defined by the Act from

---

[2] The five-step sequential analysis used to evaluate disability claims is discussed in the Applicable Law section, *infra*.

2

the onset date, January 1, 1998, through the date last insured, December 31, 2001.[3]  [R. 28, Finding 7.]

Plaintiff requested Appeals Council review of the ALJ's decision, but the Council declined review.  [R. 1–5.]  Plaintiff filed this action for judicial review on October 20, 2011. [Doc. 1.]

## THE PARTIES' POSITIONS

Plaintiff contends the ALJ's decision is not supported by substantial evidence and must be reversed and remanded, arguing the ALJ

1.  failed to assign "Controlling Weight" to the opinions of Plaintiff's treating physicians: Drs. Worsham, Dorlon, Burce, deHoll, Agha, and LeBlond [Doc. 13 at 5–11; Doc. 15];

2.  mischaracterized and misstated the record in significant aspects with respect to Plaintiff's depression and anxiety, finding these impairments non-severe when they are in fact significant [Doc. 13 at 11–12];

3.  failed to make adequate credibility findings concerning the testimony of Plaintiff regarding her pain and the functional problems caused by her pain [*id.* at 12–14]; and

4.  failed to properly consider the testimony of the vocational expert ("VE"), who testified Plaintiff would be unemployable in response to the ALJ's hypothetical [*id.* at 14–15].

The Commissioner, on the other hand, submits that ALJ's decision is supported by substantial evidence, specifically arguing the ALJ

1.  properly evaluated the medical opinions of record [Doc. 14 at 10–16];

---

[3]To be entitled to DIB, Plaintiff had to prove that she was disabled on or before her date last insured. 20 C.F.R. §§ 404.315(a) (describing who is entitled to DIB); 404.130 (explaining disability insured status); *see also Henrie v. U.S. Dep't of Health & Human Servs.*, 13 F.3d 359, 360 (10th Cir. 1993).  Thus, the relevant time period in this case is January 1, 1998 through December 31, 2001.

2. properly found Plaintiff's anxiety and depression non-severe during the relevant time period [*id.* at 16–18];

3. reasonably determined that Plaintiff's allegations of disabling pain were not entirely credible, considering the factors in 20 C.F.R. § 404.1529(c), including medical evidence and the type and effectiveness of treatment during the relevant time period [*id.* at 18–21]; and,

4. reasonably considered the VE's testimony [*id.* at 21–22].

## STANDARD OF REVIEW

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla—i.e., the evidence must do more than merely create a suspicion of the existence of a fact and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966) (citing *Woolridge v. Celebrezze*, 214 F. Supp. 686, 687 (S.D.W. Va. 1963))("Substantial evidence, it has been held, is evidence which a reasoning mind would accept as sufficient to support a particular conclusion.  It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance.  If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'").

Where conflicting evidence "allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [Commissioner] (or the [Commissioner's] designate, the ALJ)," not on the reviewing court.  *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996); *see also  Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th

4

Cir. 1991) (stating that where the Commissioner's decision is supported by substantial evidence, the court will affirm, even if the reviewer would have reached a contrary result as finder of fact and even if the reviewer finds that the evidence preponderates against the Commissioner's decision).   Thus, it is not within the province of a reviewing court to determine the weight of the evidence, nor is it the court's function to substitute its judgment for that of the Commissioner so long as the decision is supported by substantial evidence. *Laws*, 368 F.2d at 642; *Snyder v. Ribicoff*, 307 F.2d 518, 520 (4th Cir. 1962).

The reviewing court will reverse the Commissioner's decision on plenary review, however, if the decision applies incorrect law or fails to provide the court with sufficient reasoning to determine that the Commissioner properly applied the law.  *Myers v. Califano,* 611 F.2d 980, 982 (4th Cir. 1980); *see also Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994).   Where the Commissioner's decision "is in clear disregard of the overwhelming weight of the evidence, Congress has empowered the courts to modify or reverse the [Commissioner's] decision 'with or without remanding the cause for a rehearing.'"  *Vitek  v. Finch*, 438 F.2d 1157, 1158 (4th Cir. 1971) (quoting 42 U.S.C. § 405(g)).   Remand is unnecessary where "the record does not contain substantial evidence to support a decision denying coverage under the correct legal standard and when reopening the record for more evidence would serve no purpose."  *Breeden v. Weinberger*, 493 F.2d 1002, 1012 (4th Cir. 1974).

The court may remand a case to the Commissioner for a rehearing under sentence four or sentence six of 42 U.S.C. § 405(g).  *Sargent v. Sullivan*, 941 F.2d 1207 (4th Cir. 1991) (unpublished table decision).  To remand under sentence four, the reviewing court

must find either that the Commissioner's decision is not supported by substantial evidence or that the Commissioner incorrectly applied the law relevant to the disability claim. *See, e.g.*, *Jackson v. Chater*, 99 F.3d 1086, 1090–91 (11th Cir. 1996) (holding remand was appropriate where the ALJ failed to develop a full and fair record of the claimant's residual functional capacity); *Brehem v. Harris*, 621 F.2d 688, 690 (5th Cir. 1980) (holding remand was appropriate where record was insufficient to affirm but was also insufficient for court to find the claimant disabled).   Where the court cannot discern the basis for the Commissioner's decision, a remand under sentence four may be appropriate to allow the Commissioner to explain the basis for the decision.  *See Smith v. Heckler*, 782 F.2d 1176, 1181–82 (4th Cir. 1986) (remanding case where decision of ALJ contained "a gap in its reasoning" because ALJ did not say he was discounting testimony or why); *Gordon v. Schweiker*, 725 F.2d 231, 235 (4th Cir. 1984) (remanding case where neither the ALJ nor the Appeals Council indicated the weight given to relevant evidence).  On remand under sentence four, the ALJ should review the case on a complete record, including any new material evidence.  *See Smith*, 782 F.2d at 1182 ("The [Commissioner] and the claimant may produce further evidence on remand.").  After a remand under sentence four, the court enters a final and immediately appealable judgment and then loses jurisdiction.  *Sargent*, 941 F.2d 1207 (citing *Melkonyan v. Sullivan*, 501 U.S. 89, 102 (1991)).

In contrast, sentence six provides:

> The court may . . . at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding . . . .

6

42 U.S.C. § 405(g).  A reviewing court may remand a case to the Commissioner on the basis of new evidence only if four prerequisites are met: (1) the evidence is relevant to the determination of disability at the time the application was first filed; (2) the evidence is material to the extent that the Commissioner's decision might reasonably have been different had the new evidence been before him; (3) there is good cause for the claimant's failure to submit the evidence when the claim was before the Commissioner; and (4) the claimant made at least a general showing of the nature of the new evidence to the reviewing court. *Borders v. Heckler*, 777 F.2d 954, 955 (4th Cir. 1985) (citing 42 U.S.C. § 405(g); *Mitchell v. Schweiker*, 699 F.2d 185, 188 (4th Cir. 1983); *Sims v. Harris*, 631 F.2d 26, 28 (4th Cir. 1980); *King v. Califano*, 599 F.2d 597, 599 (4th Cir. 1979)), *superseded by amendment to statute*, 42 U.S.C. § 405(g), *as recognized in Wilkins v. Sec'y, Dep't of Health & Human Servs.*, 925 F.2d 769, 774 (4th Cir. 1991).[4]  With remand under sentence six, the parties must return to the court after remand to file modified findings of fact. *Melkonyan*, 501 U.S. at 98.  The reviewing court retains jurisdiction pending remand and does not enter a final judgment until after the completion of remand proceedings.  *See Allen v. Chater*, 67 F.3d 293 (4th Cir. 1995) (unpublished table decision) (holding that an order remanding a claim for Social Security benefits pursuant to sentence six of 42 U.S.C. § 405(g) is not a final order).

---

[4]Though the court in *Wilkins* indicated in a parenthetical that the four-part test set forth in *Borders* had been superseded by an amendment to 42 U.S.C. § 405(g), courts in the Fourth Circuit have continued to cite the requirements outlined in *Borders* when evaluating a claim for remand based on new evidence.  *See, e.g.*, *Brooks v. Astrue*, No. 6:10-cv-152, 2010 WL 5478648, at *8 (D.S.C. Nov. 23, 2010); *Ashton v. Astrue*, No. TMD 09-1107, 2010 WL 3199345, at *3 (D. Md. Aug. 12, 2010); *Washington v. Comm'r of Soc. Sec.*, No. 2:08-cv-93, 2009 WL 86737, at *5 (E.D. Va. Jan. 13, 2009); *Brock v. Sec'y of Health & Human Servs.*, 807 F. Supp. 1248, 1250 n.3 (S.D.W. Va. 1992).  Further, the Supreme Court of the United States has not suggested *Borders'* construction of § 405(g) is incorrect.  *See Sullivan v. Finkelstein*, 496 U.S. 617, 626 n.6 (1990).  Accordingly, the Court will apply the more stringent *Borders* inquiry.

**APPLICABLE LAW**

The Act provides that disability benefits shall be available to those persons insured for benefits, who are not of retirement age, who properly apply, and who are under a disability.  42 U.S.C. § 423(a).  "Disability" is defined as:

> the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 consecutive months.

*Id.* § 423(d)(1)(A).

**I.    The Five Step Evaluation**

To facilitate uniform and efficient processing of disability claims, federal regulations have reduced the statutory definition of disability to a series of five sequential questions. *See, e.g.*, *Heckler v. Campbell*, 461 U.S. 458, 461 n.2 (1983) (noting a "need for efficiency" in considering disability claims).  The ALJ must consider whether (1) the claimant is engaged in substantial gainful activity; (2) the claimant has a severe impairment; (3) the impairment meets or equals an impairment included in the Administration's Official Listings of Impairments found at 20 C.F.R. Pt. 404, Subpt. P, App. 1; (4) the impairment prevents the claimant from performing past relevant work; and (5) the impairment prevents the claimant from having substantial gainful employment.  20 C.F.R. § 404.1520.  Through the fourth step, the burden of production and proof is on the claimant.  *Grant v. Schweiker*, 699 F.2d 189, 191 (4th Cir. 1983).  The claimant must prove disability on or before the last day of her insured status to receive disability benefits.  *Everett v. Sec'y of Health, Educ. &*

8

*Welfare*, 412 F.2d 842, 843 (4th Cir. 1969). If the inquiry reaches step five, the burden shifts to the Commissioner to produce evidence that other jobs exist in the national economy that the claimant can perform, considering the claimant's age, education, and work experience. *Grant*, 699 F.2d at 191. If at any step of the evaluation the ALJ can find an individual is disabled or not disabled, further inquiry is unnecessary. 20 C.F.R. § 404.1520(a); *Hall v. Harris*, 658 F.2d 260, 264 (4th Cir. 1981).

### A. *Substantial Gainful Activity*

"Substantial gainful activity" must be both substantial—involves doing significant physical or mental activities, 20 C.F.R. § 404.1572(a)—and gainful—done for pay or profit, whether or not a profit is realized, *id.* § 404.1572(b). If an individual has earnings from employment or self-employment above a specific level set out in the regulations, he is generally presumed to be able to engage in substantial gainful activity. *Id.* §§ 404.1574–.1575.

### B. *Severe Impairment*

An impairment is "severe" if it significantly limits an individual's ability to perform basic work activities. *See id.* § 404.1521. When determining whether a claimant's physical and mental impairments are sufficiently severe, the ALJ must consider the combined effect of all of the claimant's impairments. 42 U.S.C. § 423(d)(2)(B). The ALJ must evaluate a disability claimant as a whole person and not in the abstract, having several hypothetical and isolated illnesses. *Walker v. Bowen*, 889 F.2d 47, 49–50 (4th Cir. 1989) (stating that, when evaluating the effect of a number of impairments on a disability claimant, "the

9

[Commissioner] must consider the combined effect of a claimant's impairments and not fragmentize them"). Accordingly, the ALJ must make specific and well-articulated findings as to the effect of a combination of impairments when determining whether an individual is disabled. *Id.* at 50 ("As a corollary to this rule, the ALJ must adequately explain his or her evaluation of the combined effects of the impairments."). If the ALJ finds a combination of impairments to be severe, "the combined impact of the impairments shall be considered throughout the disability determination process." 42 U.S.C. § 423(d)(2)(B).

**C.     *Meets or Equals an Impairment Listed in the Listings of Impairments***

If a claimant's impairment or combination of impairments meets or medically equals the criteria of a listing found at 20 C.F.R. Pt. 404, Subpt. P, App.1 and meets the duration requirement found at 20 C.F.R. § 404.1509, the ALJ will find the claimant disabled without considering the claimant's age, education, and work experience. 20 C.F.R. § 404.1520(d).

**D.     *Past Relevant Work***

The assessment of a claimant's ability to perform past relevant work "reflect[s] the statute's focus on the functional capacity retained by the claimant." *Pass v. Chater*, 65 F.3d 1200, 1204 (4th Cir. 1995). At this step of the evaluation, the ALJ compares the claimant's residual functional capacity[5] with the physical and mental demands of the kind of work he has done in the past to determine whether the claimant has the residual functional capacity to do his past work. 20 C.F.R. § 404.1560(b).

_____

[5]Residual functional capacity is "the most [a claimant] can still do despite [his] limitations." 20 C.F.R. § 404.1545(a).

### E.    *Other Work*

As previously stated, once the ALJ finds that a claimant cannot return to her prior work, the burden of proof shifts to the Commissioner to establish that the claimant could perform other work that exists in the national economy.  *See Hunter v. Sullivan*, 993 F.2d 31, 35 (4th Cir. 1992); 20 C.F.R. § 404.1520(f)–(g).  To meet this burden, the Commissioner may sometimes rely exclusively on the Medical-Vocational Guidelines (the "grids").  Exclusive reliance on the "grids" is appropriate where the claimant suffers primarily from an exertional impairment, without significant nonexertional factors.[6]  20 C.F.R. Pt. 404, Subpt. P, App. 2, § 200.00(e); *see also Gory v. Schweiker*, 712 F.2d 929, 930–31 (4th Cir. 1983) (stating that exclusive reliance on the grids is appropriate in cases involving exertional limitations).  When a claimant suffers from both exertional and nonexertional limitations, the grids may serve only as guidelines.  *Gory*, 712 F.2d at 931. In such a case, the Commissioner must use a vocational expert to establish the claimant's ability to perform other work.  20 C.F.R. § 404.1569a; *see Walker*, 889 F.2d at 49–50 ("Because we have found that the grids cannot be relied upon to show conclusively that claimant is not disabled, when the case is remanded it will be incumbent upon the [Commissioner] to prove by expert vocational testimony that despite the combination of exertional and nonexertional impairments, the claimant retains the ability to perform

---

[6] An exertional limitation is one that affects the claimant's ability to meet the strength requirements of jobs. 20 C.F.R. § 404.1569a(a).  A nonexertional limitation is one that affects the ability to meet the demands of the job other than the strength demands.  *Id.*  Examples of nonexertional limitations include but are not limited to difficulty functioning because of being nervous, anxious, or depressed; difficulty maintaining attention or concentrating; difficulty understanding or remembering detailed instructions; difficulty seeing or hearing. § 404.1569a(c)(1).

11

specific jobs which exist in the national economy."). The purpose of using a vocational expert is "to assist the ALJ in determining whether there is work available in the national economy which this particular claimant can perform." *Walker*, 889 F.2d at 50. For the vocational expert's testimony to be relevant, "it must be based upon a consideration of all other evidence in the record, . . . and it must be in response to proper hypothetical questions which fairly set out all of claimant's impairments." *Id.* (citations omitted).

## II.     Developing the Record

The ALJ has a duty to fully and fairly develop the record. *See Cook v. Heckler*, 783 F.2d 1168, 1173 (4th Cir. 1986). The ALJ is required to inquire fully into each relevant issue. *Snyder*, 307 F.2d at 520. The performance of this duty is particularly important when a claimant appears without counsel. *Marsh v. Harris*, 632 F.2d 296, 299 (4th Cir. 1980). In such circumstances, "the ALJ should scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts, . . . being especially diligent in ensuring that favorable as well as unfavorable facts and circumstances are elicited." *Id.* (internal quotations and citations omitted).

## III.     Treating Physicians

If a treating physician's opinion on the nature and severity of a claimant's impairments is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" in the record, the ALJ must give it controlling weight. 20 C.F.R. § 404.1527(c)(2); *see Mastro v. Apfel*, 270 F.3d 171, 178 (4th Cir. 2001). The ALJ may discount a treating physician's opinion if it is

unsupported or inconsistent with other evidence, i.e., when the treating physician's opinion does not warrant controlling weight, *Craig*, 76 F.3d at 590, but the ALJ must nevertheless assign a weight to the medical opinion based on the 1) length of the treatment relationship and the frequency of examination; 2) nature and extent of the treatment relationship; 3) supportability of the opinion; 4) consistency of the opinion with the record a whole; 5) specialization of the physician; and 6) other factors which tend to support or contradict the opinion, 20 C.F.R. § 404.1527(c). Similarly, where a treating physician has merely made conclusory statements, the ALJ may afford the opinion such weight as is supported by clinical or laboratory findings and other consistent evidence of a claimant's impairments. *See Craig*, 76 F.3d at 590 (holding there was sufficient evidence for the ALJ to reject the treating physician's conclusory opinion where the record contained contradictory evidence).

In any instance, a treating physician's opinion is generally entitled to more weight than a consulting physician's opinion. *See Mitchell v. Schweiker*, 699 F.2d 185, 187 (4th Cir. 1983) (stating that treating physician's opinion must be accorded great weight because "it reflects an expert judgment based on a continuing observation of the patient's condition for a prolonged period of time"); 20 C.F.R. § 404.1527(c)(2). An ALJ determination coming down on the side of a non-examining, non-treating physician's opinion can stand only if the medical testimony of examining and treating physicians goes both ways. *Smith v. Schweiker*, 795 F.2d 343, 346 (4th Cir. 1986). Further, the ALJ is required to review all of the medical findings and other evidence that support a medical source's statement that a claimant is disabled. 20 C.F.R. § 404.1527(d). However, the ALJ is responsible for

13

making the ultimate determination about whether a claimant meets the statutory definition of disability.  *Id.*

## IV.    Medical Tests and Examinations

The ALJ is required to order additional medical tests and exams only when a claimant's medical sources do not give sufficient medical evidence about an impairment to determine whether the claimant is disabled.  20 C.F.R. § 404.1517; *see also Conley v. Bowen*, 781 F.2d 143, 146 (8th Cir. 1986).  The regulations are clear: a consultative examination is not required when there is sufficient medical evidence to make a determination on a claimant's disability.  20 C.F.R. § 404.1517.  Under the regulations, however, the ALJ may determine that a consultative examination or other medical tests are necessary.  *Id.*

## V.    Pain

Congress has determined that a claimant will not be considered disabled unless he furnishes medical and other evidence (e.g., medical signs and laboratory findings) showing the existence of a medical impairment that could reasonably be expected to produce the pain or symptoms alleged.  42 U.S.C. § 423(d)(5)(A).  In evaluating claims of disabling pain, the ALJ must proceed in a two-part analysis.  *Morgan v. Barnhart,* 142 F. App'x 716, 723 (4th Cir. 2005) (unpublished opinion).  First, "the ALJ must determine whether the claimant has produced medical evidence of a 'medically determinable impairment which could reasonably be expected to produce . . . the actual pain, in the amount and degree, alleged by the claimant.'"  *Id.* (quoting *Craig*, 76 F.3d at 594).  Second, "if, and only if, the

14

ALJ finds that the claimant has produced such evidence, the ALJ must then determine, as a matter of fact, whether the claimant's underlying impairment *actually* causes her alleged pain." *Id.* (emphasis in original) (citing *Craig*, 76 F.3d at 595).

Under the "pain rule" applicable within the United States Court of Appeals for the Fourth Circuit, it is well established that "subjective complaints of pain and physical discomfort could give rise to a finding of total disability, even when those complaints [a]re not supported fully by objective observable signs." *Coffman v. Bowen*, 829 F.2d 514, 518 (4th Cir. 1987) (citing *Hicks v. Heckler*, 756 F.2d 1022, 1023 (4th Cir. 1985)). The ALJ must consider all of a claimant's statements about his symptoms, including pain, and determine the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence. 20 C.F.R. § 404.1528. Indeed, the Fourth Circuit has rejected a rule which would require the claimant to demonstrate objective evidence of the pain itself, *Jenkins v. Sullivan*, 906 F.2d 107, 108 (4th Cir. 1990), and ordered the Commissioner to promulgate and distribute to all administrative law judges within the circuit a policy stating Fourth Circuit law on the subject of pain as a disabling condition, *Hyatt v. Sullivan*, 899 F.2d 329, 336–37 (4th Cir. 1990). The Commissioner thereafter issued the following "Policy Interpretation Ruling":

> This Ruling supersedes, only in states within the Fourth Circuit (North Carolina, South Carolina, Maryland, Virginia and West Virginia), Social Security Ruling (SSR) 88-13, Titles II and XVI: Evaluation of Pain and Other Symptoms:
> ...
>
> **FOURTH CIRCUIT STANDARD:** Once an underlying physical or [m]ental impairment that could reasonably be expected to cause pain is shown by medically acceptable

15

objective evidence, such as clinical or laboratory diagnostic techniques, the adjudicator must evaluate the disabling effects of a disability claimant's pain, even though its intensity or severity is shown only by subjective evidence.  If an underlying impairment capable of causing pain is shown, subjective evidence of the pain, its intensity or degree can, by itself, support a finding of disability.  Objective medical evidence of pain, its intensity or degree (i.e., manifestations of the functional effects of pain such as deteriorating nerve or muscle tissue, muscle spasm, or sensory or motor disruption), if available, should be obtained and considered.  Because pain is not readily susceptible of objective proof, however, the absence of objective medical evidence of the intensity, severity, degree or functional effect of pain is not determinative.

SSR 90-1p, 55 Fed. Reg. 31,898-02, at 31,899 (Aug. 6, 1990).  SSR 90-1p has since been

superseded by SSR 96-7p, which is consistent with SSR 90-1p.  *See* SSR 96-7p, 61 Fed.

Reg. 34,483-01 (July 2, 1996).  SSR 96-7p provides, "If an individual's statements about

pain or other symptoms are not substantiated by the objective medical evidence, the

adjudicator must consider all of the evidence in the case record, including any statements

by the individual and other persons concerning the individual's symptoms."  *Id.* at 34,485;

*see also* 20 C.F.R. § 404.1529(c)(1)–(c)(2) (outlining evaluation of pain).

## VI.    Credibility

The ALJ must make a credibility determination based upon all the evidence in the

record.  Where an ALJ decides not to credit a claimant's testimony about pain, the ALJ

must articulate specific and adequate reasons for doing so, or the record must be obvious

as to the credibility finding.  *Hammond v. Heckler*, 765 F.2d 424, 426 (4th Cir. 1985).

Although credibility determinations are generally left to the ALJ's discretion, such

determinations should not be sustained if they are based on improper criteria.  *Breeden*,

493 F.2d at 1010 ("We recognize that the administrative law judge has the unique advantage of having heard the testimony firsthand, and ordinarily we may not disturb credibility findings that are based on a witness's demeanor. But administrative findings based on oral testimony are not sacrosanct, and if it appears that credibility determinations are based on improper or irrational criteria they cannot be sustained.").

## APPLICATION AND ANALYSIS

**Brief Medical History**

Plaintiff received treatment from J. David deHoll, M.D., at Anderson Orthopaedic Clinic beginning in October 1998. [R. 176–80.] Dr. deHoll's initial examination revealed Plaintiff had full range of motion in her right upper extremity, but she complained of pain during the examination. [R. 179.] She was instructed to wear appropriate shoes and to engage in a good stretching program, and she was prescribed anti-inflammatory medication. [R. 179–80.] In December 1998, Plaintiff demonstrated full range of motion on examination. [R. 178.] She mentioned "severe chronic back problems" that she had had for "several years." [*Id.*] Dr. deHoll commented that a bone scan did not show any increased activity or abnormality in her spine. [*Id.*]

In a February 1999 treatment note, Dr. deHoll noted that Plaintiff's nerve conduction study tests on her right arm were "perfectly normal." [R. 177.] Plaintiff reported being "stiff" in the morning and worse at the end of the day, with her discomfort related to her activity level. [*Id.*] Darvocet controlled her joint pain. [*Id.*] Dr. deHoll suspected inflammatory arthropathy and referred Plaintiff to a rheumatologist. [R. 176–77.]

Plaintiff received treatment from Amir Agha, M.D., at Foothills Rheumatology beginning in April 1999. [R. 183–88.] In April, she had normal range of motion, muscle strength, and reflexes. [R. 185.] Dr. Agha diagnosed Plaintiff with polyarthralgia and a mild case of inflammatory arthropathy, which improved with a small dose of prednisone. [*Id.*] Dr. Agha discussed Plaintiff's symptoms with her and assured her that her symptoms were not serious at that time. [*Id.*]

Plaintiff received treatment from C. Allen Bruce, M.D., at the Allergic Disease and Asthma Center in March 2001. [R. 194–97, 201–205.] In June 2001, Robert Dorlon, M.D., at Arthritis Care and Therapy began treating Plaintiff. [R. 225, 248–65.] In October 2001, Dr. Dorlon ordered x-rays of Plaintiff's lumbar and cervical spine and right knee, which did not reveal any abnormalities. [R. 258–60.]

Stephen F. Worsham, M.D., was Plaintiff's general practitioner during the relevant time period. [R. 219–46.] Among other things, Dr. Worsham treated Plaintiff for her complaints of pain, insomnia, anxiety, arm sores, and colds. [*Id.*] Many of his notes during the relative time period reflect that Plaintiff's examinations were within normal limits and that her examinations were "unremarkable and stable." [*Id.*] Dr. Worsham placed place no functional limitations on Plaintiff during the relevant time period. [*See id.*]

In June 2009, Dr. Worsham completed a Clinical Assessment of Pain questionnaire ("pain questionnaire") opining that Plaintiff's pain was incapacitating; medication limited her ability to perform simple, every day tasks; she experienced severe pain in almost all areas of her body; and her pain would interfere with her ability to complete a normal workday and workweek. [R. 339–41.] Dr. Worsham also opined that Plaintiff had the same level of limitations in December 2001. [R. 341.] On the same day, Dr. Worsham also completed

18

a functional capacity evaluation representing that Plaintiff could not even lift light-weight articles like ledgers and small tools for more than two hours; could not stand or walk for more than a few minutes; could not sit for six hours; would need to alternate between sitting and standing; and could not stoop.  [R. 342–43.]  Dr. Worsham again represented that Plaintiff had the same level of limitation since at least December 30, 2001.  [R. 342–44.]

**Weight Assigned to the Treating Physician Opinions**

Plaintiff argues the ALJ erred by not giving Plaintiff's treating physicians' opinions controlling weight because, considering all medical evidence of record, there is no persuasive evidence contradicting their opinions.  [Doc. 13 at 5–11.]  Plaintiff specifically takes issue with the ALJ's treatment of Dr. Worsham's opinion that Plaintiff had disabling limitations since at least her date last insured.  [*Id.* at 6–8.]

### *The ALJ's Evaluation of the Medical Opinions*

In evaluating the medical evidence of record, the ALJ specifically addressed the treatment notes and findings of Drs. deHoll, Bruce, Agha, LeBlond, and Worsham, as well as Plaintiff's testimony, and found that the evidence did not support the severe functional limitations Plaintiff alleged prior to the date last insured.  [R. 26–28.]  Specifically, the ALJ found Dr. Worsham's assessment to be inconsistent with his objective findings and the substantial evidence of record.  [R. 28.]  The ALJ noted,

> Objective evidence shows the claimant's pain was controlled with medications, with no side-effects reported and on follow up visits she was doing well.  Dr. Worsham's evidence of record prior to date last insured Exhibit 5F does not support his conclusion of disability.  Claimant's overall credibility seemed low as she appeared to maximize her symptoms.  Therefore,

19

> it appears that Dr. Worsham's opinion in Exhibit 13F is based
> on claimant's subjective allegations rather than objective
> findings. Furthermore, Dr. Worsham's statements are opinions
> that are reserved to the Commissioner and are not entitled to
> controlling weight or special significance.

[*Id.*]  Additionally, the ALJ noted that Dr. deHoll, who treated Plaintiff for right upper extremity pain, predominately lateral epicondylitis, performed a bone scan that revealed mild degenerative changes and a neurological evaluation that showed nerve conductions were perfectly normal.  [R. 27.]  The ALJ also noted Dr. Agha, who treated Plaintiff for complaints of pain around her elbow and shoulder, which was diffusely widespread, found no effusion in the elbow, MCP, knee, or ankle joint; no synovitis in the peripheral joints; and found muscle strength and reflexes were intact.  [*Id.*]  Dr. Agha diagnosed Plaintiff with polyarthralgia, myalgia, impingement syndrome, and lateral epicondylitis and advised her to stretch and perform range of motion exercises.  [*Id.*]

Lastly, the ALJ noted Plaintiff received treatment from Dr. LeBlond, who reported Plaintiff's back pain was stable on medications, with no side effects; straight leg raising was negative; no clubbing, cyanosis, or edema; sensation was intact; deep tendon reflexes were equal; motor strength was 5/5; and Plaintiff was neurologically stable.  [*Id.*]  Dr. LeBlond recommended consistency with home exercises.  [*Id.*]  In light of this medical evidence, the ALJ concluded Plaintiff's "pain and subjective symptoms are of mild to moderate severity, are responsive to conservative treatment and are not severe enough to restrict claimant from performing light work."  [R. 28.]

*Analysis*

The ALJ is obligated to evaluate and weigh medical opinions "pursuant to the following non-exclusive list: (1) whether the physician has examined the applicant, (2) the treatment relationship between the physician and the applicant, (3) the supportability of the physician's opinion, (4) the consistency of the opinion with the record, and (5) whether the physician is a specialist." *Johnson v. Barnhart*, 434 F.3d 650, 654 (4th Cir. 2005) (citing 20 C.F.R. § 404.1527). Courts typically "accord 'greater weight to the testimony of a treating physician' because the treating physician has necessarily examined the applicant and has a treatment relationship with the applicant." *Id.* (quoting *Mastro*, 270 F.3d at 178). While the ALJ may discount a treating physician's opinion if it is unsupported or inconsistent with other evidence, *Craig*, 76 F.3d at 590, the ALJ must still weigh the medical opinion based on the factors listed in 20 C.F.R. § 404.1527(c).

The opinion of a treating physician is given controlling weight only if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(c)(2). Additionally, Social Security Ruling ("SSR") 96-2p requires that an ALJ give specific reasons for the weight given to a treating physician's medical opinion:

> [A] finding that a treating source medical opinion is not well supported by medically acceptable clinical and laboratory diagnostic techniques or is inconsistent with the other substantial evidence in the case record means only that the opinion is not entitled to "controlling weight," not that the opinion should be rejected. Treating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. 404.1527 and 416.927. In many cases, a treating source's opinion will be entitled to the greatest weight and should be adopted, even if it does not meet the test for controlling weight.

21

1996 WL 374188, at *4 (July 2, 1996). However, not every opinion offered by a treating

source is entitled to deference:

> Medical sources often offer opinions about whether an
> individual who has applied for title II or title XVI disability
> benefits is "disabled" or "unable to work," or make similar
> statements of opinions. In addition, they sometimes offer
> opinions in other work-related terms; for example, about an
> individual's ability to do past relevant work or any other type of
> work. Because these are administrative findings that may
> determine whether an individual is disabled, they are reserved
> to the Commissioner. Such opinions on these issues must not
> be disregarded. However, even when offered by a treating
> source, they can never be entitled to controlling weight or given
> special significance.

SSR 96-5p, 1996 WL 374183, at *5 (July 2, 1996); *see also* 20 C.F.R. § 404.1527(e)

(stating an ALJ does not have to "give any special significance to the source of an opinion

on issues reserved to the Commissioner," such as an opinion that the claimant is disabled,

the claimant's impairment or impairments meets or equals a listing, or the claimant has a

certain residual functional capacity).

In this case, the ALJ considered the June 2009 opinion of Dr. Worsham that Plaintiff

has been disabled since on or before December 31, 1998 and decided it was not entitled

to "controlling weight or special significance." [R. 28.] While a treating physician may offer

retrospective opinions on the past extent of an impairment, *Wooldridge v. Bowen*, 816 F.2d

157, 160 (4th Cir. 1987) (holding "medical evaluations made subsequent to the expiration

of a claimant's insured status are not automatically barred from consideration and may be

relevant to prove a previous disability"), Plaintiff retains the burden of establishing disability

prior to the expiration of her insured status, *see Johnson*, 434 F.3d at 655–56. Upon

review, the Court concludes the ALJ properly considered Dr. Worsham's opinion in light

of the medical evidence, including Dr. Worsham's treatment notes and the notes of the other treating physicians, and in accordance with the above cited regulations, and properly determined that Dr. Worsham's opinion of disability was not supported by the medical evidence. The Court also finds that the ALJ's decision that Plaintiff otherwise failed to carry her burden of demonstrating disability prior to her date last insured is supported by substantial evidence.

Further, the ALJ properly weighed and relied on the opinions of state agency doctors in finding Plaintiff not disabled. "State agency medical and psychological consultants and other program physicians, psychologists, and other medical specialists are highly qualified physicians, psychologists, and other medical specialists who are also experts in Social Security disability evaluation." 20 C.F.R. § 404.1527(e)(2)(i). Unless a treating source's opinion is given controlling weight, the ALJ must explain the weight he gives to the opinions of agency doctors, and such opinions are evaluated using the same factors used for other medical sources. *Id.* § 404.1527(e)(2)(ii); *see Smith*, 795 F.2d at 345–46 (stating that the opinion of a non-examining physician can constitute substantial evidence to support the decision of the Commissioner). The ALJ agreed with the state agency medical consultants that Plaintiff was not disabled and gave significant weight to the state agency opinion that Plaintiff was limited to light work because the ALJ found these limitations adequately accommodated her severe impairments. [R. 28.] While Plaintiff takes issue with the weight given to the state agency opinion because it was not based on a complete record of the case [Doc. 13 at 10], Plaintiff has made no effort to explain how the remaining exhibits, if considered, would change or contradict the findings of the state agency consultants. Without more from Plaintiff and upon review of the record,

23

the Court concludes the ALJ's decision with respect to the state examiner's opinion is supported by substantial evidence.

Ultimately, it is the responsibility of the Commissioner, not a reviewing court, to review the case, make findings of fact, and resolve conflicts of evidence. *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). A court must not, however, abdicate its duty to scrutinize the record as a whole to determine whether the Commissioner's conclusions are rational. *Oppenheim v. Finch*, 495 F.2d 396, 397 (4th Cir. 1974). Based on the above, the Court finds the ALJ's treatment of the medical opinions is supported by substantial evidence and is not contrary to law.

**Mental Impairments**

Plaintiff contends the ALJ committed reversible error by mischaracterizing and misstating the record in significant aspects and, as a result, incorrectly found Plaintiff's depression and anxiety are nonsevere impairments. [Doc. 13 at 11.] Plaintiff argues the ALJ required Plaintiff to prove abject helplessness before she could receive disability benefits. [*Id.*] Specifically, Plaintiff contends the evidence shows her depression and anxiety are significant because she has been prescribed Zoloft, Cymbalta, and Trazodone to combat her depression; has anxiety to where she picks at her skin and causes it to become infected; she has the belief there are foreign bodies under her skin; and she has problems with memory, concentration, and thinking. [*Id.* (citing R. 59, 64, 66, 221–26).]

At Step 2 of the five-step evaluation process, the ALJ must follow a "special technique" to determine the severity of a claimant's mental impairments. 20 C.F.R. § 404.1520a(a). Under the special technique, the ALJ first evaluates the claimant's

24

pertinent symptoms, signs, and laboratory findings to determine if the claimant has a medically determinable mental impairment. *Id.* § 404.1520a(b)(1). Then the ALJ rates the claimant's degree of functional limitation resulting from the impairment. *Id.* § 404.1520a(b)(2). The rating determines whether the claimant's impairment is severe or not severe. *Id.* § 404.1520a(d).

To rate a claimant's degree of functional limitation, the ALJ considers four broad functional areas: activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation. *Id.* § 404.1520a(c)(3); *see* 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00C. To arrive at a rating, the ALJ considers factors such as "the quality and level of [the claimant's] overall functional performance, any episodic limitations, the amount of supervision or assistance [the claimant] require[s], and the settings in which [the claimant is] able to function." 20 C.F.R. § 404.1520a(c)(2); *see* 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00C–H. The ratings for the first three functional areas—activities of daily living; social functioning; and concentration, persistence, or pace—consist of a five-point scale: none, mild, moderate, marked, and extreme. *Id.* 20 C.F.R. § 404.1520a(c)(4). For the fourth functional area—episodes of decompensation—the ALJ uses a four-point scale: none, one or two, three, and four or more. *Id.* If the ALJ rates the claimant's degree of limitation as none or mild in the first three functional areas and none in the fourth functional area, the ALJ will usually conclude the claimant's impairment is not severe, "unless the evidence otherwise indicates that there is more than a minimal limitation in [the claimant's] ability to do basic work activities." *Id.* § 404.1520a(d)(1).

Here, in determining Plaintiff's depression and anxiety to be non-severe impairments, the ALJ made the following findings:

> The claimant's depression and anxiety are non-severe impairments because they do not cause more than minimal limitation in the claimant's ability to perform basic mental activities. Her depression was doing well on Cymbalta.
>
> The claimant has the following degree of limitation in the broad areas of function set out in the disability regulations for evaluating mental disorders and in the mental disorders listings in 20 CFR, Part 404, Subpart P, Appendix 1: mild restriction in activities of daily living, mild difficulties in maintaining social functioning, mild difficulties in maintaining concentration, persistence or pace, and no episodes of decompensation, each of extended duration. Neither claimant's testimony nor medical evidence preceding the date last insured suggest that claimant had more than the mild limitations I have found as a result of her depression and anxiety.

[R. 25–26 (citations omitted).] Considering the evidence of record, the ALJ concluded Plaintiff could still perform light work. [R. 26.]

In challenging the ALJ's decision, Plaintiff merely directs the Court's attention to evidence of record that could support a contrary conclusion.[7] [Doc. 13 at 11.] Although Plaintiff may disagree with the ALJ's determination, the Court is constrained to affirm the ALJ's decision so long as substantial evidence of record supports that decision. *See* 42

---

[7]Plaintiff also failed to explain how the ALJ mischaracterized or misstated the record or what specific evidence the ALJ mischaracterized or misstated. To the extent Plaintiff argues the ALJ by not acknowledging in her decision the evidence Plaintiff points out, Plaintiff's argument is without merit. An ALJ is not required to address every piece of evidence in a file. *See Brewer v. Astrue*, No. 7:07-CV-24-FL, 2008 WL 4682185, at *3 (E.D.N.C. Oct. 21, 2008) (collecting cases addressing this point). Rather, "so long as the narrative opinion is sufficien[tl]y detailed and cogent on the ultimate issues for the reviewing court to follow the ALJ's logic and reasoning and supported by substantial evidence in the record, then the lack of specific findings on more subordinate issues . . . does not require reversal." *Mellon v. Astrue*, No. 4:08-2110-MBS, 2009 WL 2777653, at *13 (D.S.C. Aug. 31, 2009) (emphasis added). Here, even if the ALJ determined Plaintiff's depression and anxiety were severe impairments, that determination would not direct a finding of disabled. Therefore, to the extent the ALJ erred by failing to discuss evidence related to Plaintiff's depression and anxiety, such error does not require reversal.

U.S.C. § 405(g); *Edwards*, 937 F.2d at 584 n.3 (stating that where the Commissioner's decision is supported by substantial evidence, the court will affirm, even if the reviewer would have reached a contrary result as finder of fact and even if the reviewer finds that the evidence preponderates against the Commissioner's decision).  As previously stated, the responsibility for resolving conflicts in the evidence falls on the ALJ, not on the reviewing court.  *Craig*, 76 F.3d at 589.  Thus, it is not within the province of a reviewing court to determine the weight of the evidence, nor is it the court's function to substitute its judgment for that of the Commissioner so long as the decision is supported by substantial evidence.  *Laws*, 368 F.2d at 642; *Snyder*, 307 F.2d at 520.  Without more from Plaintiff, the Court cannot find the ALJ's decision with respect to the severity of Plaintiff's depression and anxiety is erroneous.

**Credibility**

Plaintiff argues the ALJ committed reversible error by failing to make adequate credibility findings  concerning Plaintiff's testimony, specifically arguing the ALJ failed to comply with SSR 96-7p and 20 C.F.R. § 404.1529 in evaluating Plaintiff's subjective complaints.  [Doc. 13 at 12.]  Plaintiff also contends the ALJ's disregard of Plaintiff's subjective complaints of pain was unjustified because there was objective evidence supporting her complaints.  [*Id.* at 13.]

Whenever a claimant's statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, the ALJ must make a finding on the credibility of the claimant's statements based on a consideration of the entire case record.  SSR 96-7p, 61 Fed. Reg. at 34,485.

27

The credibility determination "must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." *Id.*; *see also Hammond*, 765 F.2d at 426 (stating that the ALJ's credibility determination "must refer specifically to the evidence informing the ALJ's conclusions").

The following is a nonexhaustive list of relevant factors the ALJ should consider in evaluating a claimant's symptoms, including pain: (1) the claimant's daily activities; (2) the location, duration, frequency, and intensity of the claimant's symptoms; (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medication taken to alleviate the symptoms; (5) treatment, other than medication, received to relieve the symptoms; and (6) any measures the claimant has used to relieve the symptoms. 20 C.F.R. § 1529(c)(3). If the ALJ points to substantial evidence in support of her decision and adequately explains the reasons for his finding on the claimant's credibility, the court must uphold the ALJ's determination. *Mastro*, 270 F.3d at 176 (holding that the court is not to "undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of" the agency).

In this case, substantial evidence supports the ALJ's credibility determination. The ALJ accepted that Plaintiff had impairments capable of causing pain and explained why she found Plaintiff's treatment notes did not support her allegations of disabling pain. [R. 26–27.] As stated above, treatment notes indicated Plaintiff had intact muscle strength and reflexes, stable back pain with medication, negative straight leg raises, extremities within normal limits, and symptoms improved with medication. [R. 27–28.] The ALJ pointed to

28

substantial evidence in support of her decision and adequately explained the reasons for her finding on Plaintiff's credibility, and the record substantiates the ALJ's determination that Plaintiff was not as limited during the relevant time period as she alleged.  Thus, the Court must uphold the ALJ's determination.

**Vocational Expert Testimony**

Plaintiff contends the ALJ committed reversible error by asking the VE a hypothetical question based on substantial evidence and then ignoring the answer from the VE indicating that Plaintiff was unemployable.  [Doc. 13 at 14–15.]  Further, Plaintiff contends the ALJ committed error by failing to explain why the VE's opinion was rejected. [*Id.* at 15.]

"In order for a vocational expert's opinion to be relevant or helpful, it must be based upon a consideration of all other evidence in the record, and it must be in response to proper hypothetical questions which fairly set out all of [the] claimant's impairments." *Walker*, 889 F.2d at 50 (citations omitted).  However, the Fourth Circuit has found that an ALJ's hypothetical questions were "entirely proper" when the ALJ asked alternative hypotheticals, with one "incorporat[ing the claimant's] subjective complaints and one that did not." *Davis v. Apfel*, 162 F.3d 1154, 1998 WL 559728, at *2 (4th Cir. 1998) (unpublished table decision).  The Fourth Circuit noted that "[b]y presenting a hypothetical, the ALJ was not making findings of fact," and accordingly, the ALJ could ask contradictory hypotheticals during examination of the VE and determine later which hypothetical "most closely fit the evidence of record."  *Id.*

Here, the ALJ posed the following hypothetical to the VE:

> All right, so if someone of the Claimant's age, education, and experience were, due to symptoms from chronic pain and fatigue, unable to sustain a pace of eight hours a day, five, five days a week, would any of [Plaintiff's past] jobs be available?

[R. 68.]  The VE responded that such limitations would preclude Plaintiff's past work and any other work.  [*Id.*]  Neither the ALJ nor Plaintiff's counsel further questioned the VE.

The ALJ ultimately determined Plaintiff retained the RFC to perform the full range of light work [R. 26], and thus, the ALJ found the additional limitations included in the hypothetical—chronic pain, fatigue, and an inability to sustain a pace of eight hours a day, five days a week—were not supported by the record.  Because the hypothetical posed to the VE did not fit the evidence of record, the ALJ was not bound by the answer elicited from the VE.  Accordingly, the Court finds no error in the ALJ's treatment or use of the VE's testimony.

## CONCLUSION AND RECOMMENDATION

Wherefore, based on the foregoing, it is recommended that the decision of the Commissioner be AFFIRMED.

IT IS SO RECOMMENDED.

<u>s/Jacquelyn D. Austin</u>
United States Magistrate Judge

December 18, 2012
Greenville, South Carolina

30